[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner brings this petition for a writ of habeas corpus alleging that his criminal trial attorneys, first Eskine Mac Intosh and later Barry Butler, were ineffective as to count one by having a conflict of interest with the counsel of his co-defendant and that there was a conflict of interest with the petitioner's interest and co-defendant's interest and as to count two by failing to properly advise him as to the burden of the state, failing to properly investigate the case and not having witnesses available for his trial.
The petitioner testified that both Mac Intosh and Butler were public defenders who were supervised by William Holden who represented his co-defendant, David Bailey. Although Bailey had given a statement to the police, he understood that the State was not going to use it in his joint trial with Bailey. Petitioner testified that he learned of the statement on the day of trial. But he felt pressured to go to plea because his co-defendant was always crying since he didn't want to go to trial, and was crying in front of a venire panel brought down for their case. The State would not agree to a plea bargain for one without the other. Both had to plead or go to trial. He testified that he was also being pressured by his attorney to take a plea because Holden, his boss, was pressuring him and he wanted to avoid trouble for his attorney. Holden at one time told him, he testified, that "You shouldn't make David go to trial if he doesn't want to."
Butler testified that there was no conflict in the representation of Wideman and Bailey by himself and Holden from the same office since the defenses were the same for both and the CT Page 3444 statement of Bailey was not going to be used at trial by the State.
The incident giving rise to the arrests was as follows. Eric Amado stashed a large amount of cocaine at an apartment occupied by Joanne Bailey and Hope Vaughn. Vaughn helped transfer it to the apartment of Anthony Young. When Amado learned of its disappearance, he enlisted the aid of both Bailey and Wideman along with A.J. Smalls. They took Ms. Bailey and Vaughn to Young's apartment. Amado told Bailey and Wideman, who had guns, to cover the rear and Smalls to cover the front while he walked the two women to the front door. Young and one Peter Hall came to the door and an argument ensued. During the argument Amado pulled out a gun and shot both Young and Hall resulting in their deaths. All four men fled without going into the apartment where the cocaine was later found.
Butler testified that both the petitioner and Bailey had the same defense that Amado was the shooter and that they were only there because they were afraid Amado would blame them for the theft of the cocaine. Amado was going to use self-defense. Butler was prepared to proceed to trial. There was concern however when Amado was found guilty of all the charges including Capital Felony which carried a penalty of life without the possibility of release. This occurred while they were selecting jurors for their case on the same charges for which Amado was found guilty. They were extremely disappointed because they had expected Amado to testify for them in an attempt to exculpate them. The petitioner indeed called him as a witness in this case but he pleaded the Fifth Amendment because his case was still on appeal. Butler further testified that after the petitioner's plea but before sentencing the petitioner wished to withdraw his plea but Judge Damiani refused. That decision was affirmed by the Appellate Court and certification was denied by the Supreme Court. The petitioner received a ten year sentence for an attempted robbery charge, the most lenient of sentences given to Amado, Smalls, the petitioner and Bailey. He felt that the petitioner had intelligently decided that the plea agreement was in his best interest now that Amado was found guilty, removed as he was from giving exculpating testimony for the petitioner and that both Hope Vaughn and Joanne Bailey who had testified for the State in Amado's trial was available to testify against the petitioner.
Judge William Holden who had represented the petitioner's co-defendant, Bailey, when a public defendant, saw no conflict of CT Page 3445 interest because there were no adverse interests and their defenses were the same. He never put any pressure on his own client, Bailey, to plead nor on the petitioner. He never put any pressure on Atty. Butler as to how the petitioner's case should be handled. He recalled that offers had been made as they picked a jury and saw no encouragement by Mr. Butler when the petitioner decided to accept the plea bargain.
 I
The petitioner claims that Mr. Butler was burdened by an actual conflict of interest in that he failed to do that which his client wished which was going to trial. The parties admit that as the jurors were being selected and as the joint trial neared petitioner's co-defendant, Bailey, wanted to go to plea. The concept of conflict of interest therefore posed by the petitioner in this case is the petitioner's "right to counsel's undivided loyalty." Phillips v. Warden, 220 Conn. 112, 137. Early in the proceedings in this matter the State raised to the court the possibility of a conflict of interest in that counsel for both the petitioner and Bailey were from the same public defender's office and the matter was heard by Judge Ronan on March 20, 1991, see Respondent's Exhibit A, at which time Judge Holden, then representing Bailey, stated for the court that respective counsel had conferred with their respective clients and found no conflict then existed and that they had complied with the conflict of interest rules. After counsels discussion, the judge asked the petitioner if he understood and if he did understand, did he have any problem. He responded "I have no problem with it." Id. p. 5. Again on October 7, 1993 before Judge Ford, acting on a motion to sever, Assistant State Attorney Benedict stated that there was no "Bruton" problem between the petitioner and Bailey because only Bailey had made a statement and that the State was not going to offer it. See Respondent's Exhibit B, pp.5-6. Then at his plea to a charge of attempted robbery in the first degree before Judge Damiani on November 5, 1993, he was asked if "Anyone force or threaten you to plead guilty" to which he replied "No, sir." Respondent's Exhibit D, p. 9.
This is consistent with Judge Holden's testimony that he exerted no pressure on Bailey, the petitioner or Atty. Butler and felt no conflict as the case approached trial. It is also consistent with Mr. Butler's testimony that Judge Holden never pressured him nor his client and he himself was ready for trial before the jury until both Bailey and the petitioner were CT Page 3446 disheartened when Amado was found guilty of all the charges against him. It effectively removed Amado as a witness who would give exculpating testimony for them. The petitioner was aware Hope Vaughn who testified in Amado's case and had already given testimony in his probable cause linking him with Amado and Smalls and David Bailey, all of them armed with handguns to obtain the alleged narcotics held by Anthony Young which Amado claimed as his, was available now to testify in his case. Her testimony included that the petitioner had a handgun when he stood at Amado's side as he fired at Young and Hall whose dead bodies were later found by the police. His change in circumstances was sufficient reason for the petitioner to accept the plea bargain and belies his claim that he was coerced.
 II
As to the second count, the petitioner was well aware as to what the State had to prove as demonstrated at his hearing in probable cause and how the State would proceed and the potential witnesses. See Respondent's Exhibit C. He did not disclose any other eyewitnesses to the event of the homicides other than those described by Hope Vaughn in her testimony at that hearing. There was no claimed alibi defense. There was an intimation that Vaughn had made a statement inconsistent with her testimony at the hearing in probable cause about not seeing the petitioner with a gun. She did testify that she saw his gun in his hand in her apartment prior to going to Anthony Young's home. Even if that part of her testimony was put in question, it would have no impact on the rest of her testimony concerning the petitioner's activities with Amado, in her apartment and at the scene of the homicides. Such testimony would also undermine the petitioner's claimed defense as to the lack of knowledge of the fire power at the scene and being an inactive or compelled spectator.
Furthermore Mr. Butler availed himself of the best investigative tool, sitting through the entire trial of Amado.
 III
The petitioner has failed to show that counsel's representation fell below an objective standard of reasonableness.Aillon v. Meachum, 211 Conn. 352, 537. Even if the petitioner had been able to do so, a successful petitioner must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would CT Page 3447 have been different. Copas v. Commissioner, 234 Conn. 139 (1995);Strickland v. Washington, 466 U.S. 668. 694. The likelihood after trial with the tested evidence before the Amado jury would be a guilty finding of a greater charge calling for a greater penalty. The only difference would be that Amado was the shooter and that he felt reason to obtain return of his alleged property.
For the above reasons the petition is denied.
Corrigan, JTR